NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MIGNONE SALLY N'JIE and EDWARD B. MENDY, | : : : | |
| Plaintiffs, | : : | Civil Action No. 09-919 (SRC) |
| v. | : : | OPINION |
| MEI CHEUNG, JIN LOK, ABC INSURANCE COMPANY and XYZ INSURANCE COMPANY, | : : : : : | |
| Defendants. | : | |

**CHESLER**, District Judge

This matter comes before the Court on motion for summary judgment by Defendants Mei Cheung, Jin Lok, ABC Insurance Company, and XYZ Insurance Company (collectively, "Defendants"). Plaintiffs have opposed the motion. The Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, the Court will grant Defendants' motion in its entirety.

I.   BACKGROUND

Very briefly, this case arises from a landlord/tenant dispute pertaining to an option-to-buy term in a lease agreement between the parties. On March 3, 2009, Mignone Sally N'Jie and Edward B. Mendy (collectively, "Plaintiffs") filed the Complaint in this action, asserting fourteen

claims against Defendants which generally relate to the allegation that Mei Cheung (hereinafter "Cheung") has breached the lease. Eight of Plaintiffs' claims were dismissed by this Court in a July 13, 2009 order and Defendants now move for summary judgment on the remaining six counts.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)).

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

B.   **Defendants' Motion for Summary Judgment**

1.   First Count: Breach of Contract

Defendants move for summary judgment on the First Count of the Complaint for breach of contract based on two grounds: 1) Cheung's reason for declining to renew the lease agreement fits within a statutorily enumerated "good cause" ground; and 2) Cheung acted in accordance with the terms of the contract when she refused to sell Plaintiffs the apartment. In opposition, Plaintiffs dispute Defendants' motivations for wanting to personally occupy the unit, alleging they are pretextual and the eviction, therefore, is unlawful. In addition, Plaintiffs argue that the option-to-buy provision of the lease agreement created an express obligation for Cheung to sell them the property and that her failure to do so was a repudiation of the contract.

a.   *Non-Renewal of the Lease*

The parties do not dispute the fundamental principles that this Court should apply to the inquiry as to whether or not Defendants had good cause to refuse to renew the lease agreement. The Anti-Eviction Act, N.J.S.A. § 2A:18-61.1, limits a landlord's right to evict a residential tenant to statutorily enumerated "good cause" reasons. *Aquino Colonial Funeral Home v. Pittari*, 586 A.2d 331, 331 (N.J. Super. Ct. App. Div. 1991). A landlord establishes "good cause" within the meaning of N.J.S.A. § 2A:18-61.1(l)(3) when

> [t]he owner of a building of three residential units or less seeks to personally occupy a unit, or has contracted to sell the residential unit to a buyer who wishes to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing.

N.J.S.A. § 2A:18-61.1(l)(3) (2011). While the statute is framed to afford "residential tenants the right, absent good cause for eviction, to continue to live in their homes without fear of eviction or

lease non-renewal and thereby to protect them from involuntary displacement," the Legislature enacted N.J.S.A. § 2A:18-61.1(l)(3) in order "to assure that the owner of a building with a small number of residential units can reside in his own building and have some control over the persons with whom he lives." *Morristown Mem'l Hosp. v. Wokem Mortg. & Realty Co.*, 469 A.2d 515, 517 (N.J. Super. Ct. App. Div. 1983); *Durruthy v. Brunert*, 549 A.2d 456, 457 (N.J. Super. Ct. App. Div. 1988). Therefore, the statute enables a residential owner who does not yet occupy the building to displace a tenant in order to make an apartment available for his or her own use.

  The parties here dispute whether Defendant Cheung and her husband Jin Lok (hereinafter "Lok") intend to personally occupy the apartment. The language in the Anti-Eviction statute places the burden of establishing one of the possible grounds for eviction upon the landlord. *Hale v. Farrakhan*, 915 A.2d 581, 584 (N.J. Super. Ct. App. Div. 2007). Because Defendants bear the burden of proof at trial, they carry the summary judgment burden of showing that no reasonable jury could find for the non-moving party on this issue. In support of their motion, the Defendants assert they intend to personally occupy the apartment for two reasons: their desire for more space in order to start a family, and because of their eviction from their current residence. Defendants have shown an authentic, subjective intention to personally occupy their unit. To defeat the motion for summary judgment, Plaintiffs must point to evidence from which a reasonable jury could conclude that Defendants do not intend to personally occupy the apartment. The only evidence Plaintiffs proffer in support of their contention is that Cheung lied about her motivation for asking Plaintiffs to leave the apartment, as evidenced by the dual reasons she gave. However, Plaintiffs cannot defeat summary judgment solely by challenging Defendant's

5

credibility because a court may not make credibility determinations when considering a motion for summary judgment. *Marino*, 358 F.3d at 247. Summary judgment requires Plaintiffs to point to evidence that would establish a genuine issue of material fact and Plaintiffs fail to carry this burden since they merely dispute Defendants' reasons for wanting to personally occupy the apartment, not their actual intention to do so. As such, Plaintiffs have not provided sufficient evidence to allow a jury to find in their favor at trial. Therefore, as a matter of law, Plaintiffs cannot prevail on their claim that Cheung's failure to renew the lease amounted to a contract breach.

      b.    *Option-to-Buy Provision*

Defendants additionally move for summary judgment on the ground that the "option to buy" and "right of first refusal" language included in paragraph 32 of the lease agreement entitles Plaintiffs to an opportunity to purchase the property ahead of another buyer and not to force a sale. In opposition, Plaintiffs contend that the provision in the lease is an option, giving them the unilateral power to compel Cheung to sell them the property.

New Jersey substantive law governs the question of contract interpretation in this matter. *See Mayfair Supermarkets, Inc. v. Acme Mkts., Inc.*, No. 87-3994, 1989 U.S. Dist. LEXIS 3466, at **18-19 (D.N.J. Apr. 3, 1969) ("Historically, a lease was considered a conveyance of an interest in real estate and, consequently, was interpreted under the principles of property law; however, current New Jersey law construes lease agreements under the same guidelines employed to interpret contracts.") In New Jersey, "[t]he construction of the terms of a written lease is a matter of law for the courts." *Barclays Bank*

*P.C. v. 865 Centennial Ave. Assocs. Ltd. P'Ship,*, 26 F. Supp. 2d 712, 718 (D.N.J. 1998). When interpreting a lease, like other contracts generally, a court is to give plain and ordinary meaning to the contractual terms and should not read or enforce the terms in such a way as to "write a different or better contract for the parties." *Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002). In the interpretation of a contract, the intention of the parties is to be gathered from the language used in the instrument as a whole. *Washington Const. Co., Inc., v. Spinella*, 80 A.2d 318, 320 (N.J. Super. Ct. App. Div. 1951). "The situation of the parties, the attendant circumstances, and the objects they sought to attain are all necessarily to be considered by the trial court in it inquiry as to the intention of the parties." *Schnakenberg v. Gibraltar Sav. & Loan Ass'n*, 117 A.2d 191, 194 (N.J. Super. Ct. App. Div. 1961).

    The contested lease provision states: "Option to renew for one year lease terms. Rent for second year shall be $2400.00. Option to buy. Right of first Refusal." (Lease Agreement ¶ 32, April 15, 2007.) This language, lacking all material terms, can not be interpreted to give rise to an enforceable option to buy. By Plaintiff's own admission, the terms of the option were vague and unspecific and needed to be negotiated, including establishing a reasonable time for the exercise of the contested option and the setting of a reasonable purchase price. (Mendy Dep. at 41:17-19, 61:18-62:17, 64:7-15.) In addition, there is no evidence in the record that the parties ever contemplated any financing conditions, closing date, amount of time for the option to remain open, or any other terms that would normally appear. *See generally Wellmore*, 140 A.2d at 426-27; *Goffman*, 2008 N.J. Super. Unpub. LEXIS 979, at **16-17. As such, only if Cheung placed the property on the market would

there be a duty arising out of the lease to involve the Plaintiffs in some form or fashion, either by negotiating a deal directly with them or soliciting third party offers which, in turn, would have to be transmitted to the plaintiffs on a right of first refusal basis. Because Plaintiffs had no right to compel Cheng to sell her property, Cheung's refusal to do so did not amount to a contract breach.

Therefore, Plaintiffs have failed to carry their summary judgment burden, as the nonmovant with the burden of proof at trial, of pointing to sufficient evidence for a jury to find in their favor at trial. No issue as to any material fact precludes the entry of judgment as a matter of law. Defendants' motion for summary judgment on the First Count will be granted.

2.  Second Count: Post-Termination Violations

Defendants move for summary judgment on the Second Count of the Complaint, for breach of the lease agreement via "post-termination violations." This claim is clearly a cause of action for breach of the implied covenant of good faith since Plaintiffs allege Defendants "fail[ed] to act in good faith" by "not negotiating . . . for the resolution of the contract issues with Plaintiffs." (Pls.' Opp'n to Defs.' Summ. J. Mot. 22, Dec. 13, 2010.) "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000) ("every contract in New Jersey contains an implied covenant of good faith and fair dealing.")

Defendants have met their burden at summary judgment by pointing to the absence of

evidence to support Plaintiffs' claim. In response, Plaintiffs offer bare accusations that the duty was breached, unsupported by any argument or evidence as to how Defendants' actions amounted to a violation of the implied covenant. Accordingly, Defendants have met their Rule 56 burden of demonstrating that summary judgment on the claim is appropriate. As a matter of law, Plaintiffs cannot prevail on the Second Count and Defendants' summary judgment on the claim will be granted.

### 3. Third Count: Inducing Contract Breach

Defendants move for summary judgment on the Third Count of the Complaint, arguing that the evidence cannot support a claim that Lok induced Cheung to breach the lease agreement. In New Jersey, to establish the tort of interference with an existing contract, a plaintiff must prove: "(1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." *DiGiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 557 (D.N.J. 2002). While the lease agreement is a valid and existing contract between Cheung and the Plaintiffs, this Court has concluded that Cheung did not breach the contract in any way. Furthermore, the only evidence Plaintiffs offer in support of their claim that Lok interfered with the contractual relationship is their observation that "Cheung became more rigid in her position in deciding to keep the Property" after marrying Lok. (Pls.' Opp'n to Defs.' Summ. J. Mot. 23-24.) This observation alone does not constitute evidence that Lok intentionally and maliciously interfered with the lease agreement, as required by law. Because Plaintiffs have failed to show that they can prove an essential element of the inducement of a contract breach claim, Defendants' motion for

summary judgment as to the Third Count will be granted.

    4.  Sixth Count: Libel and Slander

The Sixth Count of the Complaint seeks damages for libel and slander based upon Defendants' statements to third parties that Plaintiffs falsely claimed to have an option to buy the property. The parties do not dispute the facts relating to this claim. Defendants simply contend that the statements made by them do not support a defamation claim as a matter of law.

Under New Jersey law, to establish a prima facie case of defamation, whether denominated libel or slander, a plaintiff must show that the defendant (1) made a defamatory statement of fact (2) concerning the plaintiff (3) which was false, and (4) which was communicated to a person or persons other than the plaintiff. *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 189 (3d Cir. 1998). A statement is defamatory when it is "false and 'injurious to the reputation of another' or exposes another person to 'hatred, contempt or ridicule' or subjects them to 'a loss of the good will and confidence' in which he or she is held by others." *Romaine v. Kallinger*, 537 A.2d 284, 287 (N.J. 1988). In addition, to be actionable, all slanderous statements falling outside a *per se* category[1] require proof of special damages other than an injury to reputation or emotional distress. Restatement of Torts § 575 (1938). Typically considered as a pecuniary loss, special damages are "actual and concrete damages capable of being estimated in money." *Beverly Enters., Inc. v. Trump*, 182 F.3d

---

[1] *Per se* categories include statements imputing a criminal offense, a loathsome disease, improper conduct of a lawful business, or unchastity of a woman and do not require proof of special damages. *Ward v. Zelikovsky*, 643 A.2d 972, 977 (N.J. 1994).

183, 188 (3d Cir. 1999).

Viewing the facts in the light most favorable to Plaintiffs, even if Defendants' statements that Plaintiffs lied about the existence of an option-to-buy rose to the level of exposing Plaintiffs to "hatred, contempt, or ridicule," Plaintiffs have failed to put forth any evidence that the comments made by Defendants caused them any monetary or "out of pocket" loss. Because plaintiffs have only alleged damage to their reputation and hurt feelings, they cannot prevail on their defamation claim as a matter of law and summary judgment will be granted in Defendants' favor.

### 5. Eleventh Count: Unjust Enrichment

Defendants move for summary judgment on the Eleventh Count of the Complaint, contending that they are not indebted to the Plaintiffs for the changes Plaintiffs made to the apartment because the lease agreement specifically exempts Cheung from paying for any improvements made to the property. In opposition, Plaintiffs argue that they have a right to recover, under the quasi-contract theory of unjust enrichment, for the improvements they made to Cheung's apartment during their tenancy. There is no dispute about any material fact here. The question before the Court is whether these facts support a claim for unjust enrichment as a matter of law.

To establish a claim for unjust enrichment, a plaintiff must prove that defendant received a benefit and that retention of that benefit without payment would be unjust. *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 541 (N.J. 1994). The unjust enrichment doctrine "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched

defendant beyond its contractual rights." *Id*. Quasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties. *Van Ormen v. American Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982). The authority of an express contract will take precedent over a theory of unjust enrichment or quasi-contract liability concerning the identical subject matter since "[t]he parties are bound by their agreement, and there is no ground for implying a promise so long as a valid unrescinded contract governs the rights of the parties." *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.,* 716 F.2d 220, 226-27 (3d Cir. 1983).

Plaintiffs allege that they made improvements to the property - namely purchasing larger furniture, repainting the apartment, and buying and installing customized drapes and carpeting - and that allowing Defendants to retain such benefits without payment would be unjust. However, the subject matter of Plaintiffs' unjust enrichment claim against Defendants is covered by an express contract, the lease agreement, between these parties. Paragraph 7 of the lease specifically states that the Landlord is not responsible for paying for any improvements, even when consent to make the improvements is given, and that the improvements become the property of the Landlord once they are made. (Lease Agreement ¶ 7.) It is clear that the subject matter of this dispute, the improvements to the premises, is covered by an express contract: paragraph 7 of the lease agreement. Accordingly, this Court concludes that Plaintiffs have no unjust enrichment claim for improvements made to the property. Therefore, Defendants have shown that they are entitled to judgment as a matter of law on this claim and the motion for summary judgment will be granted.

6. <u>Twelfth Count: Detrimental Reliance</u>

Defendants move for summary judgment on the Twelfth Count of the Complaint, contending that the evidence cannot support a detrimental reliance claim. Specifically, Defendants argue that Cheung never promised to sell Plaintiffs the apartment and that, even if a promise to sell had been made, Plaintiffs have not suffered any detrimental consequences from their reliance on the promise. In opposition, Plaintiffs assert that Defendants represented that they would sell the property to the Plaintiffs and that, to their detriment, Plaintiffs passed up various opportunities to rent or buy other properties at a lower price in reliance on those statements.

Under New Jersey law, to plead a cause of action for promissory estoppel, Plaintiffs must sufficiently allege these elements:

> (1) clear and definite promise by the promisor;
> (2) promise must be made with expectation that promisee will rely thereon;
> (3) promisee must in fact reasonably rely on the promise, and
> (4) detriment of a definite and substantial nature must be incurred in reliance on the promise.

*Royal Assocs. v. Concannon*, 490 A.2d 357, 361 (N.J. Super. Ct. App. Div. 1985). Indefinite promises or promises subject to change by the promisor are not "clear and definite" and cannot give rise to a claim for promissory estoppel. *Aircraft Inventory Corp. v. Falcon Jet Corp.*, 18 F. Supp. 2d 409, 416 (D.N.J. 1998) (no clear and unambiguous promise where specificity with respect to conditions of the sale such as "warranties, disclaimers, delivery, taxes, and allocation of risk of loss were not established nor even discussed.")

The parties do not dispute most of the relevant basic facts. Although Defendants challenge Plaintiffs' contention that they incurred a detriment in reliance on Cheung's

13

promise to sell them the apartment, the Court need not address this issue since Plaintiffs' detrimental reliance claim fails to survive at the first step of the aforementioned analysis. The parties agree that Cheung did not make a "clear and definite" promise to sell the apartment. By his own admissions during his deposition, Plaintiff Mendy stated that he "could not get any real affirmation or commitment from Cheung" about selling the property because she "always gave him plausible reasons for her reason not to sell" and that no sale price was ever established. (Mendy Dep. 59:1, 62:12, 82:7.) Plaintiff's own statements illustrate that Defendants never made any unambiguous and concrete promise to sell, as required by law. As such, the alleged promise to sell is insufficient, as a matter of law, to support a claim for detrimental reliance. Therefore, as to the Twelfth Count, Defendants have shown that they are entitled to judgment as a matter of law and the motion for summary judgment will be granted.

### C.     Rule 56(d) Application

Plaintiffs urge the Court to delay its decision on Defendants' motion for summary judgment pursuant to Rule 56(d). Rule 56(d) provides that a court may refuse the application for judgment or order a continuance if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Plaintiffs contend that summary judgment is premature in the current case because they have not had an opportunity to complete deposition of Defendants due to inadequate time for discovery.

On August 16, 2010 Magistrate Judge Michael Shipp closed fact discovery with finality in this case based on its procedural history and the conduct of the parties. (Shipp Op.

and Order 10, Aug. 16, 2010.)  In his order, Judge Shipp pointed to at least five separate instances in which Plaintiffs failed to comply with the court's orders and deadlines throughout the discovery process.  (*Id*. at 2-6.)   In the August 16th order, Judge Shipp dismissed Plaintiffs' motion to compel responses to interrogatories, document discovery, and appearances for depositions because Plaintiffs failed to submit supplementary exhibits that were necessary to the merits of their motion, in spite of the Judge's numerous text orders and voice mails over a five month period instructing their submission.  (*Id*. at 10-11.)  Moreover, Judge Shipp found that even if additional time for discovery was granted, the proceedings would be thwarted by the parties' inability to work with one another.  (*Id*. at 9.)  Because Plaintiffs had adequate time to complete discovery in this case and failed to comply with discovery demands on multiple occasions, this Court denies their request to delay a decision on Defendants' motion for summary judgment pursuant to Rule 56(d).

III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion, ordering summary judgment in their favor on the First, Second, Third, Sixth, Eleventh, and Twelfth Counts of the Complaint.  An appropriate form of Order will be filed.

    s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: March 1, 2011